J-S18001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL LYNN BRECHT | |
| Appellant | No. 1922 WDA 2016 |

Appeal from the PCRA Order entered November 30, 2016
In the Court of Common Pleas of Warren County
Criminal Division at No: CP-62-CR-0000524-2013; CP-62-CR-0000525-2013

BEFORE:  STABILE, MUSMANNO, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                     **FILED JULY 24, 2018**

Appellant, Daniel Lynn Brecht, appeals from the November 30, 2016 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 1-9546.  We affirm.

A prior panel of this Court summarized the relevant procedural history:

> In his two criminal cases, [Appellant] was charged initially with a total of one hundred and seventy-four charges relating to the protracted sexual abuse of two different children.  Following plea negotiations with the Commonwealth, [Appellant] agreed to plead guilty to one count each of rape by forcible compulsion, statutory sexual assault, sexual assault, aggravated indecent assault, indecent assault of a person less than thirteen years old, and corruption of the morals of a minor.[2]
>
> _____
> [2]  18 Pa.C.SA. §§ 3121(a)(1), 3122.1, 3142.1, 3125, 3126(a)(7), and 6301, respectively.  […]

All other charges were *nolle prossed* by the Commonwealth.

On June 16, 2014, [Appellant] appeared before the trial court to plead guilty to the negotiated terms as set forth above. At the guilty plea hearing, [Appellant], who was sixty-three years-old at the time of his plea, confirmed that he was not under the influence of alcohol or controlled substances at the time of his plea. He further declared that he understood all of the constitutional rights that he was waving by entering guilty pleas, and that he had no questions for the court in that regard. [Appellant] stated that he was entering the plea on his own free will, that there were no promises made to him with regard to the sentence that he would receive, and that he was not forced or threatened to take the plea. [Appellant] conceded that he had ample time to consult with his attorney, and that he was satisfied with his attorney's advice. Finally, [Appellant] confirmed his understanding that, by pleading guilty to multiple offenses, he could receive consecutive sentences for each crime to which he pleaded guilty. The trial court accepted the plea, and ordered [Appellant] to be evaluated for purposes of a sexually violent predator hearing.

*Commonwealth v. Brecht*, 139 WDA 2015 (Pa. Super. September 22, 2015), unpublished memorandum at 1-3.

On October 16, 2014, the trial court imposed an aggregate 188 to 376 months of incarceration, comprised of consecutive sentences for each count. Appellant filed a motion to withdraw his plea on October 20, 2014. The trial court denied that motion at the conclusion of a January 8, 2015 hearing. Appellant filed a timely direct appeal, and this Court affirmed the judgment of sentence. *See id.* Appellant did not file a petition for allowance of appeal in the Pennsylvania Supreme Court. On August 5, 2016, Appellant filed a timely, counseled, first PCRA petition. The PCRA court conducted a hearing on November 28, 2016. The PCRA court denied Appellant's petition at the

- 2 -

conclusion of the hearing, but the order was docketed two days later, on November 30, 2016.

Appellant filed this timely appeal on December 16, 2016. He presents five questions for our review:

> 1. Was trial counsel ineffective for never independently investigating the case or seriously mounting a defense to these charges[?]
>
> 2. Was trial counsel ineffective for never exploring a good character defense with [Appellant] although [Appellant] had no prior criminal record and had people willing to come to court and testify as to his good character for being law abiding[?]
>
> 3. Did trial counsel have a conflict of interest because if he convinced his client to enter a plea, he would get a windfall ($40,000) for his limited, minimal, insignificant services as opposed to putting in the time and effort to determine if a jury trial would be appropriate under the circumstances of this case[?]
>
> 4. Did trial counsel misrepresented [sic] the terms of the plea agreement which falsely induced [Appellant] to enter a plea[?]
>
> 5. Was trial counsel ineffective for not investigating the facts surrounding a charge of one count of rape, where [Appellant] is impotent with erectile dysfunction and was incapable of getting an erection or engaging in intercourse[?]

Appellant's Brief at 3.

We review the PCRA court's order to determine whether the record supports its findings of fact and whether it committed an error of law. ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super.

2015), *appeal denied*, 123 A.3d 331 (Pa. 2015). We conduct *de novo* review of the PCRA court's conclusions of law. *Id.*

Appellant argues that counsel was ineffective. To prevail on this claim, a PCRA petitioner must plead and prove that (1) the underlying issue is of arguable merit; (2) counsel had no reasonable strategic basis for the action or inaction; and (3) counsel's mistake prejudiced the petitioner. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa 2001). As to the second prong, we do not consider whether there were better strategic alternatives; rather, we consider whether counsel had any reasonable basis for the disputed action or inaction. *Id.* For the third prong, prejudice, we examine whether the outcome of the proceeding would have been different but for counsel's error. *Id.* We presume counsel's effectiveness, and the petitioner has the burden of proving otherwise. *Commonwealth v. Brown*, 767 A.2d 576, 581 (Pa. Super. 2001). To demonstrate prejudice, the petitioner must show a reasonable probability that, but for counsel's mistakes, the petitioner would have proceeded to trial. *Commonwealth v. Hickman*, 799 A2d 136, 141 (Pa. Super. 2002).

In all but his third question presented, Appellant challenges the adequacy of plea counsel's services in connection with Appellant's guilty plea. We must therefore be mindful of the following:

> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the

ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Wah*, 42 A.3d 335, 338–39 (Pa. Super. 2012) (quoting

*Commonwealth v. Allen*, 833 A.2d 800, 802 (Pa. Super. 2003), *appeal*

*denied*, 860 A.2d 488 (Pa. 2004)).

Our Supreme Court has addressed the adequacy of counsel's investigation:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Commonwealth v. Williams*, 141 A.3d 440, 463 (Pa. 2016) (quoting

*Strickland v. Washington*, 466 U.S. 668, 690-91 (1984)).

Appellant first asserts that counsel's investigation was inadequate and that he failed to mount a serious defense. Appellant claims plea counsel failed to seek relevant discovery, including note cards one of the victims kept with respect to the alleged assaults and the mental health records of the other victim, who allegedly suffers from hallucinations. Appellant also claims,

among other things, that counsel should have hired an investigator to explore inconsistencies in the victims' accounts of the assaults.

At the PCRA hearing, plea counsel testified that he believed based on his observations of them at the preliminary hearing that both victims would make strong trial witnesses. *Id.* at 88. Counsel stated that Appellant admitted to some but not all of the charged conduct in his initial interview with the State Police. *Id.* at 101. "[H]is main defense was, I did some of this, but not all of it." *Id.* Counsel did not think that was a good strategy for a jury trial in this case. Given his assessment of the strength of the Commonwealth's case and the 174 charges pending against Appellant, counsel elected to engage in early plea negotiations. The PCRA court noted that Appellant authorized counsel to engage in those negotiations. PCRA Court Opinion, 5/1/17, at 9.

> While Appellant may have felt that he was being 'pressured' by trial counsel, the reality of facing two (2) compelling victims' testimony, a partial confession, and potential sentences that would effectively result in a life sentence, this strategy was not unreasonable. Once the Appellant decided to accept responsibility for his conduct, and advised counsel to pursue plea negotiations, trial counsel had a reasonable basis for not pursuing further investigations.
>
> [...]
>
> Once the Appellant instructed trial counsel to pursue this strategy, **which we find to be true**, counsel cannot be faulted with pursuing that objective, negotiating a plea that results in 96% of the charges being *nolle prossed*, and the Appellant ultimately entering a voluntary plea to the charges.

*Id.* at 9. In summary, the PCRA court credited counsel's testimony that the victims would make strong witnesses, and that Appellant wished to engage in early plea negotiations. We reject Appellant's first argument based on the PCRA court's opinion.

Next, Appellant claims trial counsel was ineffective for failing to locate and interview potential character witnesses.

> A defense counsel's failure to call a particular witness to testify does not constitute ineffectiveness *per se.* In establishing whether defense counsel was ineffective for failing to call witnesses, a defendant must prove the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witnesses' testimony prejudiced petitioner and denied him a fair trial.
>
> […]
>
> **Evidence of good character offered by a defendant in a criminal prosecution must be limited to his *general reputation for the particular trait or traits of character* involved in the commission of the crime charged.** The cross-examination of such witnesses by the Commonwealth must be limited to the same traits. Such evidence must relate to a period at or about the time the offense was committed, and **must be established by testimony of witnesses as to the *community opinion* of the individual in question, *not through specific acts* or mere rumor.**

*Commonwealth v. Johnson*, 27 A.3d 244, 247-48 (Pa. Super. 2011) (internal citations and quotation marks omitted; emphasis in original).

The PCRA Court reasoned that character evidence was unlikely to help Appellant in the instant case, given his partial confession and the strong victim witnesses. Furthermore, At the PCRA hearing, Appellant presented only one possible character witness, and he testified that he and a few of Appellant's

acquaintances and coworkers were surprised to learn of the charges. PCRA Court Opinion, 5/1/17, at 11. Thus, the PCRA court concluded that Appellant failed to establish that a fuller investigation of potential character witnesses would have led Appellant to reject the plea bargain and proceed to trial. We agree, and we reject Appellant's second argument based on the PCRA court's opinion.

Third, Appellant claims that counsel had a conflict of interest because he paid counsel a nonrefundable $40,000.00 retainer. Appellant insinuates that plea counsel had an incentive to do as little work as possible after his receipt of the $40,000.00. Appellant claims counsel did not hire an investigator because the investigator would have been paid out of the $40,000.00. In support of his argument, Appellant cites Rule 1.5(a) of the Rules of Professional Conduct, which states that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Pa.R.P.C. 1.5(a). He does not develop any legal argument that an allegedly excessive fee supports a finding that counsel rendered ineffective assistance. The PCRA court summarized its findings and rationale:

> This court cannot conclude that trial counsel, motivated by greed, mislead [sic] the Appellant with respect to his case, and coerced the Appellant into an involuntary guilty plea. The court can conclude, that trial counsel reasonably pursued an early plea strategy, that Appellant entered a knowing and voluntary plea as a result, and in hindsight is unhappy with both the court's sentence and the excessive fee charged by counsel.

PCRA Court Opinion, 5/1/17, at 12. We reject Appellant's argument based on the PCRA court's opinion.

Fourth, Appellant claims counsel was ineffective for advising him that the prosecutor would not object to a seven-year minimum sentence. As noted above, the trial court imposed a considerably longer minimum sentence. Regardless, Appellant litigated this issue on direct appeal in challenging the trial court's denial of his post-sentence motion to withdraw his guilty plea:

> Instantly, we agree with appellate counsel and the trial court that [Appellant] cannot demonstrate that manifest injustice will result if he were not permitted to withdraw his guilty plea. First, the record unequivocally demonstrates that [Appellant's] decision to plead guilty was knowing, intelligent, and voluntary. Second, at the guilty plea hearing, [Appellant] confirmed that he was entering the plea on his own free will, that he was not forced or threatened in any fashion to take the plea, and that he understood that there was no agreement regarding the sentence that he would receive. [Appellant] also asserted that he was satisfied with his attorney and that his attorney discussed the facts and possible sentences at length. Finally, [Appellant] acknowledged that the court was not bound by any agreement, and that the court could impose all sentences to run consecutively to each other.
>
> At the post-sentence motion hearing, [Appellant] attempted to portray the pre-trial discussions with counsel as coercive. [Appellant] maintained that he felt like he was being funneled into a guilty plea based upon counsel's assurances that the Commonwealth would not object to a minimum prison term of seven years and that, if he went to trial and lost, he would be sentenced potentially to hundreds of years in prison. However, in the same hearing, [Appellant] admitted that counsel did not promise or guarantee any particular sentence if [Appellant] pleaded guilty.

*Brecht*, 139 WDA 2015, unpublished memorandum at 10-11. Appellant cannot make out the first prong of an ineffective assistance claim because he

already litigated the underlying issue on direct appeal. 42 Pa.C.S.A. § 9543(a)(3). We are cognizant that this Court on direct appeal decided the case under the manifest injustice standard applicable to post-sentence plea withdrawals. Regardless, our prior memorandum clearly demonstrates that this issue is without arguable merit.

Finally, Appellant claims that counsel was ineffective for failing to develop a defense based on Appellant's erectile dysfunction, which would have rendered it impossible for him to penetrate the victims' vaginas with his penis, as alleged under some of the charges. At the PCRA hearing, Appellant failed to prove his claim.

> [Appellant] presented some medical records at [the] hearing from between 2010 and 2013. They reference a past diagnosis of impotence of organic origin. Appellant's sexual assaults of his two stepdaughters occurred from 2003 to 2010. Appellant testified briefly about his diagnosis and some discussions with trial counsel and presentation of medical records, as did his sister. Trial counsel confirmed the same.
>
> However, no testimony was presented establishing that the Appellant was unable to achieve an erection at the time the sexual assaults were committed. No expert medical testimony was presented as to the nature of the dysfunction or any prescribed treatment. No medical testimony was presented that it was a permanent or total disability or whether [Appellant] was unable to achieve an erection or maintain an erection. The Appellant took the witness stand at his hearing on the motion to withdraw his guilty plea, represented by different counsel, and asserted his innocence without any mention whatsoever of impotency or erectile dysfunction and no explanation of his admission to some sexually assaultive conduct.

We reject Appellant's final argument based on the PCRA court's May 1, 2017 opinion.

For all of the foregoing reasons, we affirm the PCRA court's order, and we direct that a copy of the PCRA court's May 1, 2017 opinion be filed along with this memorandum.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/2018

IN THE COURT OF COMMON PLEAS
OF THE 37TH JUDICIAL DISTRICT OF PENNSYLVANIA
WARREN COUNTY BRANCH-CRIMINAL

COMMONWEALTH OF PENNSYLVANIA,
**Plaintiff**

vs

NO. 524 of 2013
NO. 525 of 2013

DANIEL LYNN BRECHT,
**Defendant,**

## SECOND MEMORANDUM OPINION PURSUANT TO Pa.R.A.P. 1925(a)

This Second Memorandum Opinion addresses the merits of Appellant's appeal as directed by the Superior Court in its Order for remand dated April 26, 2017. Appellant filed a timely Notice of Appeal on December 16, 2016, from the Order of this court dated November 28, 2016, denying Appellant's first Petition for Post-Conviction Relief following an evidentiary hearing held on November 28, 2016. The Petition asserted the ineffectiveness of trial counsel in a number of areas as the basis for relief. On December 16, 2016, the court entered an Order under Pa.R.A.P. 1925(b) directing that the Appellant file a concise statement of matters complained of on appeal within twenty-one (21) days. Appellant filed his timely concise statement on January 6, 2017.

In the Concise Statement of Matters Complained of on appeal, the Appellant raises the following issues:

1) Trial counsel was ineffective for never independently investigating the case or seriously mounting a defense to the charges.

2) Trial counsel never explored a good character defense for the Appellant although Appellant had no prior criminal record and had people willing to testify as to his good character for being law-abiding.

3) Trial counsel had a conflict of interest as he charged the Appellant a non-refundable fee of $40,000.00 and would receive a windfall if he convinced the Appellant to enter a plea.

On May 15 2017
I hereby certify this document to be a true
and correct copy of the original 2nd Amended Memorand
filed in this Office.

_____,Deputy

1

4) Trial counsel misrepresented the terms of the plea agreement which falsely induced the Appellant to enter a plea by assuring the Appellant that his sentence would include a minimum sentence of approximately seven (7) years and the Commonwealth would not object to that sentence.

5) Trial counsel was ineffective for failing to develop a defense based upon Appellant's inability to achieve an erection due to a diagnosis of erectile dysfunction.

## FACTUAL AND PROCEDURAL BACKGROUND

The background of this case was summarized by the Pennsylvania Superior Court, in its Opinion on Appellant's direct appeal as follows:

In his two criminal cases, Brecht was charged initially with a total of one hundred and seventy-four charges relating to the protracted sexual abuse of two different children. Following plea negotiations with the Commonwealth, Brecht agreed to plead guilty to one count each of rape by forcible compulsion, statutory sexual assault, sexual assault, aggravated indecent assault, indecent assault of a person less than thirteen years old, and corruption of the morals of a minor. All other charges were *nolle prossed* by the Commonwealth.

On June 16, 2014, Brecht appeared before the trial court to plead guilty according to the negotiated terms as set forth above. At the guilty plea hearing, Brecht, who was sixty-three years-old at the time of his plea, confirmed that he was not under the influence of alcohol or controlled substances at the time of the plea. He further declared that he understood all of the constitutional rights that he was waiving by entering guilty pleas, and that he had no questions for the court in that regard. Brecht stated that he was entering the plea on his own free will, that there were no promises made to him with regard to the sentence that he would receive, and that he was not forced or threatened to take the plea. Brecht conceded that he had ample time to consult with his attorney, and that he was satisfied with his attorney's advice. Finally, Brecht confirmed his understanding that, by pleading guilty to multiple offenses, he could receive consecutive sentences for each crime to which he pleaded guilty. The trial court accepted the plea, and ordered Brecht to be evaluated for purposes of a sexually violent predator hearing.

On September 19, 2014, Brecht appeared for sentencing. First, following a hearing, the trial court determined that Brecht met the criteria for a sexually violent predator, and designated him as such. The trial court then proceeded to sentence Brecht to an aggregate sentence of one hundred and eighty-eight months to three hundred and seventy-six months' incarceration. The aggregate sentence was comprised of individual

2

318

sentences on each count, and the trial court ordered each sentence to run consecutively to each other.

After sentencing, the parties and the court detected that the indecent assault count was incorrectly graded as a felony. Consequently, the parties appeared on October 16, 2014 for re-sentencing. At that hearing, the court corrected the grading of the indecent assault count, and imposed the same sentence as set forth above. At the conclusion of that hearing, Brecht made an oral motion to withdraw his guilty plea. The trial court advised Brecht of his appellate rights, and that the time constraints to take any appellate actions commenced on that date, not the date of the original sentence. Accordingly, the court rejected the oral motion, and directed Brecht to file a written motion within ten days.

On October 20, 2014, Brecht's plea counsel filed a motion to withdraw as counsel, wherein counsel identified not only his reasons for seeking withdrawal as counsel, but also the bases for Brecht's desire to withdraw his guilty plea. Following a hearing, the trial court granted the motion, and appointed an attorney from the Public Defender's Office to represent Brecht. On November 14, 2014, Brecht filed a second written motion to withdraw his guilty plea, wherein Brecht maintained his innocence to the charges. Brecht alleged that his trial counsel indicated to him that, if he pleaded guilty, the Commonwealth would not object to a sentence of eighty-four to one hundred and sixty-eight months' incarceration.

On January 8, 2015, the trial court held a hearing on Brecht's motion to withdraw his guilty plea. At the hearing, Brecht testified that his plea attorney had assured him that, by pleading guilty, he would only receive a minimum sentence of seven years in prison. Based upon that assurance, Brecht elected to plead guilty because, if he went to trial and was convicted, any sentence that he would receive would be much longer. Despite his statements at his guilty plea hearing, Brecht maintained at the withdrawal hearing that he did not have sufficient time to talk with his attorney, and that he was not satisfied with counsel's advice and performance at the time. However, on cross-examination, Brecht admitted that counsel never promised or guaranteed any particular sentence. Brecht asserted that counsel directed him to plead guilty based upon counsel's reasonable assurances that he would receive seven years in prison, and that the Commonwealth would not oppose such a sentence.

Plea counsel testified at the hearing that he had multiple conversations with Brecht prior to the guilty plea hearing regarding the sentences that could be imposed by the trial court. Counsel further testified that he discussed the ultimate plea agreement that counsel had reached with the Commonwealth, and informed Brecht only that the standard range sentences for the crimes to which he would plead pursuant to the agreement would approximate a minimum term of seven years. Counsel further testified that no one from the Commonwealth had agreed to that sentence, or agreed to recommend such a sentence. Counsel told Brecht only that he did not believe that the Commonwealth would object to that recommendation, not that the Commonwealth actually agreed to anything with regard to the sentence. Indeed, in one letter, counsel indicated that it was his understanding that the Commonwealth would not object to the

3

recommendation. Nonetheless, counsel testified that he discussed with Brecht at length that the trial court could reject the recommendation, and could sentence Brecht to more, or even less, than what counsel would recommend to the court. Counsel stated that he believed that Brecht understood that no sentence was agreed upon, and that Brecht often exhibited concern and anxiety about the sentence because no one knew what sentence the trial judge would impose.

At the conclusion of the hearing, the trial court denied Brecht's motion to withdraw his guilty plea. On the same day, the trial court entered an order formally denying the motion, and advising Brecht that he had thirty days to file an appeal. On January 28, 2015, Brecht filed a notice of appeal. On January 29, 2015, the trial court directed counsel to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 18, 2015, counsel for Brecht file a Rule 1925(b) statement in which counsel indicated that he had reviewed the record and concluded that there were no non-frivolous issues to pursue on appeal. Nonetheless, counsel identified one issue that might arguably support an appeal: that the trial court abused its discretion in denying Brecht's motion to withdraw his guilty plea because counsel induced Brecht to plead guilty based upon the assurance that Brecht would receive a minimum sentence of approximately seven years. *Commonwealth v. Brecht,* 193 WDA 2015.

The Superior Court affirmed the judgment of sentence in a non-precedential decision dated September 22, 2015. Appellant, through private counsel, filed a timely first Petition for Post-Conviction Relief. A hearing on the Petition was held on November 28, 2016. At the hearing, the Appellant testified and also presented the testimony of his sister, Diane Edwards, and of a proffered character witness, David Ohmer. In addition, with the stipulation of counsel, the Court took judicial notice of all prior proceedings and the transcripts thereof, including the plea proceeding, sentencing proceedings, hearing on the motion to withdraw plea, and the Superior Court Opinion on direct appeal, and all were made part of the record. The Commonwealth presented testimony from trial counsel.

At the PCRA hearing, the Appellant testified regarding his original fee agreement with counsel. The Appellant believed that the $40,000.00 paid to counsel was a retainer to be applied at the rate of $250.00 per hour for work performed by trial counsel despite the language of the written agreement that indicated that the fee was "non-refundable". The fee agreement was admitted into evidence. Appellant testified that he had limited contact with trial counsel, that there were no discussions about presenting a defense or character witnesses and the discussions with counsel were almost exclusively about entering into plea negotiations. Upon questioning by the Court, the Appellant indicated that he had provided the names of potential character

4



witnesses to trial counsel. He testified that his guilt or innocence was never discussed, rather trial counsel painted a bleak picture should Appellant go to trial on all 174 counts.

The Appellant testified about a past diagnosis of erectile dysfunction. He stated that he is unable to achieve an erection and unable to "insert his penis in a vagina". Some past medical records from 2010 to 2013 were introduced into evidence that included a diagnosis of impotence of organic origin under the Appellant's past medical history. Upon questioning by the Court, the Appellant indicated that he had turned medical records over to trial counsel and had discussed the erectile dysfunction diagnosis. The Appellant testified regarding his past military history and his lack of any prior criminal record as well. Appellant presented testimony nearly identical with his testimony at the hearing on the motion to withdraw plea, concerning discussions with trial counsel about the sentence or approximate sentence he should expect to receive if he entered the negotiated plea.

On cross-examination, the Appellant acknowledged that in prior court proceedings he had represented to the Court that he was satisfied with counsel, was entering his plea voluntarily and that no promises had been made with respect to his sentence. The Appellant also acknowledged that he had admitted to the police some contact with one of the victims. In addition he recognized that he was facing 174 charges and the plea agreement which called for a plea to just six (6) of those charges would greatly reduce his sentencing exposure. The Appellant testified that trial counsel fully reviewed the sentencing guidelines and maximum penalties as to those counts and also that the court could impose any lawful sentence irrespective of the Commonwealth's position.

David Ohmer testified that he has known the Appellant for approximately 35 years, was a former co-worker, and that he would have been willing to testify on the Appellant's behalf had the case gone to trial. He testified that he was never contacted by any attorney representing the Appellant. After repeated attempts to elicit admissible character testimony that could have been presented at trial, as opposed to the witnesses own personal opinion regarding the Appellant, the witness ultimately testified that he had a conversation with other former co-workers and the consensus, after hearing of the charges against the Appellant, was that it was "unbelievable" that this could happen.

5

Diane Edwards, the Appellant's sister testified. She had helped the Appellant obtain trial counsel and participated in his retention and was familiar with the fee agreement. She requested that trial counsel take steps to have the Appellant's bail modified or reduced so that he could be released pending trial but that trial counsel did nothing in that regard. The witness also indicated that she had provided some of Appellant's medical records to trial counsel and had advised counsel regarding the erectile dysfunction diagnosis. The witness confirmed that trial counsel presented a bleak picture of Appellant's chances at trial and the potential for being found guilty on all or many counts. She testified that trial counsel kept the $40,000.00 fee and never returned any of the funds to the Appellant.

Trial counsel testified. He testified that he entered into the fee agreement for representation of the Appellant in December of 2013. He represented the Appellant at the preliminary hearing at which the two (2) alleged victims testified. Trial counsel felt that both witnesses were strong witnesses as they appeared intelligent, and well-spoken, and advised the Appellant of that impression. Based upon the preliminary hearing testimony of the alleged victim, trial counsel concluded that the Commonwealth had a solid case. Following the testimony, the Appellant told trial counsel that it looked like they wanted to put him away for life. Trial counsel outlined his investigation of the case and representation of the Appellant. He advised the Appellant that the decision to enter a plea or take the case to trial was entirely the Appellants. With respect to potential character witnesses, the Appellant gave trial counsel "a couple of names" but nobody had returned counsel's calls. Trial counsel's opinion was that any character witness testimony would have been of little value in the case.

Trial counsel testified that he did discuss the erectile dysfunction diagnosis with the Appellant. He testified that the Appellant never informed him that he was completely unable to obtain an erection. He stated that there are treatments for the condition and that not all of the charges against the Appellant required proof of penetration or penetration by his penis. Trial counsel had been made aware that the Appellant had made an admission to the police with respect to some of the charged conduct and that in his discussions with trial counsel, "he admitted to the conduct". Trial counsel concluded that Appellant's main defense was "I did some of this, but not all of it". Trial counsel testified that with two (2) compelling alleged victims, the Appellant's partial confession, and the number of charges against him, plea negotiations were

6

322

authorized by the Appellant. After discussing the plea with the District Attorney and receiving a plea offer from the Commonwealth, trial counsel sent a letter to the Appellant outlining the plea offered. The letter was admitted into evidence. The letter indicated the counts that would be pled to, with the remaining counts *nolle prossed*. The offense gravity score for the counts and sentencing ranges were included with the understanding that Appellant had a prior record score of 0. The letter asserted that "the Commonwealth would not object to a total aggregate minimum sentence of seven years of incarceration..." however goes on to say "the Judge is not bound by the Commonwealth's position".

Trial counsel was cross-examined by PCRA counsel. The fee agreement and trial counsel's services were outlined. Trial counsel acknowledged not seeking a bond reduction as he believed it would be "frivolous" and the District Attorney was opposed. Trial counsel did not file a motion for a bill of particulars. Trial counsel did not file a motion to suppress the Appellant's incriminating statements to the police. Trial counsel acknowledged that the last sexual offense that was alleged occurred three (3) years prior to the victims' report. Trial counsel acknowledged that there was no physical evidence against the Appellant. Counsel testified that Appellant told him he could not get an erection and that the charges against him included numerous allegations of sexual intercourse. Trial counsel acknowledged that the rape charges were the most serious charges against the Appellant. No doctor or other expert was hired with respect to a defense based upon erectile dysfunction. One of the victim's maintained note cards with respect to the sexual assaults but those were not obtained in discovery. One of the victims suffered from a mental health condition that included symptoms including hallucinations but that matter was not further explored. Trial counsel believed that an agreement had been reached with the District Attorney that the Commonwealth would not object to an aggregate minimum sentence of seven (7) years.

## DISCUSSION

To prevail on a claim of ineffectiveness of counsel under the Post-Conviction Relief Act (42 Pa.C.S. §9543(a)(2)(ii)), an appellant must demonstrate the following:

1) That the underlying claim has arguable merit

2) That counsel's course of conduct was without reasonable basis designated to effectuate his client's best interests

3) That he was prejudiced by counsel's ineffectiveness, i.e. there is a reasonable probability that but for the act or admission in question, the outcome of the proceeding would have been different. ***Commonwealth v. Abdul-Salaam***, 808 A.2d 558, 561 (Pa. 2001).

It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. ***Commonwealth v. Wah,*** 42 A.3d 335, 338 (Pa.Super 2012). The law does not require that a defendant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily, and intelligently made. ***Commonwealth v. Anderson,*** 995 A.2d 1184 at 1192 (Pa.Super 2010). In addition, with regard to the prejudice prong, where an appellant has entered a guilty plea, the appellant must demonstrate "it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial. ***Commonwealth v. Rathfon,*** 899 A.2d 365, 370 (Pa.Super 2006).

Appellant's Concise Statement is addressed as follows:

1. **Trial counsel was ineffective for never independently investigating the case or seriously mounting a defense to the charges.**

Appellant's first contention is that trial counsel never independently investigated the case or seriously mounted a defense to the charges. It is well-settled that:

Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. As noted, an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's

8

decisions cannot be based upon the distorting effects of hindsight. *Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000).

Clearly had this case proceeded to trial, the investigations, or lack thereof, by trial counsel would have fallen woefully short of this obligation. Investigations regarding a possible defense of erectile dysfunction and the presentation of character witnesses will be dealt with below. Counsel filed no bill of particulars, engaged in only preliminary discovery, filed no motions to suppress evidence, conducted no investigation into the mental health of one of the alleged victims, hired no investigators, and failed to explore alleged inconsistencies in a victim's statements, or possible motives for the alleged victim's to lie. According to trial counsel, following the testimony of both alleged victim's at the preliminary hearing which trial counsel felt to be "strong", in light of the admissions made by the Appellant to both the police and trial counsel, and the 174 counts the Appellant was facing, the strategy of trial counsel early on was to pursue an acceptable plea agreement with the Commonwealth. The Appellant, after consultation with trial counsel, authorized those negotiations. While Appellant may have felt that he was being "pressured" by trial counsel, the reality of facing two (2) compelling victims' testimony, a partial confession, and potential sentences that would effectively result in a life sentence, this strategy was not unreasonable. Once the Appellant decided to accept responsibility for his conduct, and advised counsel to pursue plea negotiations, trial counsel had a reasonable basis for not pursuing further investigations. *Commonwealth v. Timchack*, 69 A.3d 765 (Pa.Super 2013).

Obviously, another strategy could have been to conduct a full investigation, hire investigators and experts, conduct discovery as if going to trial, and then utilize the possible defenses discovered as part of plea negotiations. Clearly, prosecutors take into consideration how soon a defendant in these types of cases is willing to accept responsibility and enter a plea so as to permit the victims to move on with the healing process. Adopting a strategy at an early stage of the proceedings based upon the considerations set forth above, entering into early plea negotiations was not an unreasonable strategy. Once the Appellant instructed trial counsel to pursue this strategy, which this court finds to be true, counsel cannot be faulted with pursuing that objective, negotiating a plea that results in 96% of the charges being *nolle prossed*, and the Appellant ultimately entering a voluntary plea to the charges. In a trial context, failure to conduct

9

326

the type of investigation and mount the type of defenses asserted, certainly would have been ineffectiveness by trial counsel. In a plea context, in light of the circumstances and considerations outlined by trial counsel in his testimony, it does not amount to ineffectiveness. Had the Appellant rejected the Commonwealth's plea offer and demand that his case go to trial then trial counsel certainly would have had the obligation to conduct a thorough investigation, file appropriate motions, and present all available defenses at trial.

While the Appellant has established that trial counsel did not in the type of full investigation and exploration of all types of defenses required to prepare for trial, in the context of a plea, the Appellant has failed to establish the first two prongs of the ineffectiveness burden. To an even greater extent the prejudice prong of the Appellant's burden of proof has not been met. Nothing in Appellant's presentation leads to the conclusion that had trial counsel fully investigated the case and prepared to mount any defenses available, that it is "reasonably probable" that Appellant would not have pleaded guilty and would have opted to face his two step-daughters, his admissions, and the 174 counts in front of a jury. The appellate cases require deference with respect to counsel's choices and not with the distorting effects of hindsight. Appellant made it clear at the hearing on his motion to withdraw plea, if the court had imposed an aggregate minimum sentence of around seven (7) seven years, he would not have pursued any post-sentence remedies. With the hindsight of the court's actual sentence, Appellant has undertaken to present a distorted view of what lead to his plea.

2. **Trial counsel never explored a good character defense for the Appellant although Appellant had no prior criminal record and had people willing to testify as to his good character for being law-abiding.**

Appellant asserts that trial counsel was ineffective in not investigating potential character witnesses that could have testified had the case gone to trial. Appellant asserts that he had "people" willing to come to court and testify on his behalf and trial counsel testified that there were discussions regarding character witnesses with Appellant. Counsel testified that no real effort was made to locate or interview these individuals. It should be noted that PCRA counsel had a similar obligation to contact these potential character witnesses and present their proffered character testimony. Only one such witness, Mr. Ohmer, was called by PCRA counsel and he is

325

the only potential character witness the court can consider. Frankly, after review of his testimony it is questionable whether or not any of that testimony would have been admissible character evidence. In a sexual assault case, reputation evidence only regarding certain character traits of the defendant such as non-violence, peacefulness, morality and a disposition to observe good order. It must be established as to the community opinion of the defendant. *Commonwealth v. Luther,* 463 A.2d 1073, 1077-1078 (Pa.Super. 1983).

At best, after failing on the first round of direct questioning, testimony was elicited that the witness and a few other acquaintances and co-workers of the Appellant were surprised to hear about the charges against him. Character evidence is circumstantial evidence that, in the appropriate case, may be enough to raise a reasonable doubt of guilt. Even in the context of a trial, the failure to present the limited admissible character testimony, if any, presented by Mr. Ohmer, would not support a claim of ineffectiveness in the context of this case. Trial counsel's opinion as to the value of character testimony as a general matter may have been understated, however in the context of this case, with two (2) compelling victim/witnesses and a partial confession by the Appellant, it is without merit to assert that, following an investigation by trial counsel of Mr. Ohmer's testimony, this would have led Appellant not to enter a guilty plea and take his case to trial.

3. **Trial counsel had a conflict of interest as he charged the Appellant a non-refundable fee of $40,000.00 and would receive a windfall if he convinced the Appellant to enter a plea.**

This Court certainly found the $40,000.00 fee for the services performed by counsel to be excessive and unreasonable. Certainly the time expended by counsel in this matter would render that fee to be outrageous if calculated on an hourly basis. The non-refundable nature of that fee also could be viewed as an incentive for trial counsel to minimize his time on the case to achieve the maximum financial benefit. A quick plea benefits trial counsel. An extensive investigation, motions practice, trial preparation and lengthy trial would diminish that economic benefit. It certainly left the Appellant without funds for private representation on direct appeal after counsel withdrew and failed to return any of those funds. This court could uncover no case law or ethics ruling that indicate that criminal defense counsel accepting a flat fee or non-refundable retainer, no matter how large, automatically creates a conflict of interest or per se ineffectiveness. As

11

excessive as the fee may have been, the court is constrained to consider the fee in the context of the alleged ineffectiveness of counsel. If pursuing the early plea strategy is determined to be an appropriate and reasonable strategy, and the Appellant is only exhibiting buyer's remorse over the court's sentence, it is difficult to see how the unreasonable fee impacts upon that. Clearly, Appellant believed that trial counsel was presenting him with an exceedingly bleak picture of his chances at trial and felt pressured to accept the plea. On the other hand, in the context of this case, the plea strategy was a reasonable one and if Appellant had received the seven (7) year minimum sentence he was hoping for, he would not be pursing his post-sentence rights. This court cannot conclude that trial counsel, motivated by greed, mislead the Appellant with respect to his case, and coerced the Appellant into an involuntary guilty plea. The court can conclude, that trial counsel reasonably pursued an early plea strategy, the Appellant entered a knowing and voluntary plea as a result, and in hindsight is unhappy with both the court's sentence and the excessive fee charged by trial counsel.

4. **Trial counsel misrepresented the terms of the plea agreement which falsely induced the Appellant to enter a plea by assuring the Appellant that his sentence would include a minimum sentence of approximately seven (7) years and the Commonwealth would not object to that sentence.**

This issue was fully addressed by the Pennsylvania Superior Court in its Memorandum Opinion filed in support of the Court's Affirmance of the sentence entered by the court on direct appeal. *Commonwealth v. Brecht*, 193 WDA 2015. The same assertions were made by Appellant at the hearing on his post-sentence motion to withdraw his guilty plea. The Court held, in part, that "...it is clear that Brecht was not unlawfully or illegally induced into pleading guilty. No promises or guarantees were made to him. He knew at all times that there was no firm agreement on the sentence that he would receive." It is true that the issue before the Superior Court on direct appeal was whether Appellant demonstrated "manifest injustice" that would permit the post-sentence withdrawal of his guilty plea and, in the context of this P.C.R.A. petition, his burden is the three-prong burden set forth above. As indicated above, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. In that

12

328

context, and in light of the Superior Court's prior opinion, the Appellant has failed in his burden of proof.

While Appellant has adopted a different theory with respect to the voluntariness of the plea and the court's failure to permit withdrawal of that plea, the Superior Court has held that a claim previously litigated in a direct appeal is not cognizable under the P.C.R.A., 42 Pa.C.S.A. §9544(a)(2). ***Commonwealth v. Chester,*** 733 A.2d 1242, 1253 (Pa. 2000). The mere fact that Appellant is now advancing new arguments in support of the previously litigated claim regarding the voluntariness of his plea, is of no avail. A PCRA petitioner cannot obtain review of previously litigated claims decided adversely to him in his direct appeal simply by setting forth those claims again in a PCRA petition and setting forth new theories of relief in support thereof. ***Commonwealth v. Morales,*** 701 A.2d 516, 521 (Pa.1997). The purpose of a PCRA is not to provide a defendant with the means of re-litigating the merits of issues long since decided on direct appeal. ***Commonwealth v. Henry,*** 706 A.2d 313, 322 (Pa. 1997). On direct appeal, the Appellant challenged the trial court's refusal to permit him to withdraw his plea based upon the assertion that trial counsel had misled him regarding the sentence he would receive if he entered that plea. The Superior Court affirmed this Court's decision. Now, as part of his PCRA petition, the Appellant has raised the very same issue in the context of a claim of ineffectiveness. This claim should fail on that basis.

**5. Trial counsel was ineffective for failing to develop a defense based upon Appellant's inability to achieve an erection due to a diagnosis of erectile dysfunction.**

From the onset it should be pointed out that trial counsel is being charged with ineffectiveness for failing to develop a defense based upon Appellant's inability to achieve an erection due to a diagnosis of erectile dysfunction, yet PCRA counsel failed as well to present evidence or testimony, expert or otherwise, that supports this defense. Defendant presented some medical records at hearing from between 2010 and 2013. They reference a past diagnosis of impotence of organic origin. Appellant's sexual assaults of his two step-daughters occurred from 2003 through 2010. Appellant testified briefly about his diagnosis and some discussions with trial counsel and presentation of medical records, as did his sister. Trial counsel confirmed the same.

13

However, no testimony was presented establishing that the Appellant was unable to achieve an erection at the time the sexual assaults were committed. No expert medical testimony was presented as to the nature of the dysfunction or any prescribed treatment. No medical testimony was presented that it was a permanent and total disability or whether the defendant was unable to achieve an erection or maintain an erection. The Appellant took the witness stand at his hearing on the motion to withdraw his guilty plea, represented by different counsel, and asserted his innocence without any mention whatsoever of impotency or erectile dysfunction and no explanation of his admission to some sexually assaultive conduct.. PCRA counsel could have hired an expert, subpoenaed Appellant's past medical providers, or otherwise present evidence of such a valid defense, but failed to do so. The limited testimony and untimely medical records do not support the proposition that had trial counsel conducted the investigation in question, he would have produced evidence or information that would have compelled the Appellant to go to trial as opposed to entering a plea. Frankly, the only person who knew with absolute certainty what the Appellant was capable of during the relevant period of time with respect to achieving or maintain erections, was the Appellant himself, who pled guilty to charges that included penetration and intercourse. Appellant certainly could have taken the stand and asserted at all times relevant he could not achieve an erection. Nothing trial counsel could have discovered in any further investigation could have changed that. However, to corroborate or bolster that defense, expert testimony would have been required and no such expert or proposed expert testimony was presented. While baldly asserting that an investigation would have supported that defense and led to expert testimony, Appellant has failed to identify that expert or how that expert would have assisted him. These types of bald allegations do not entitle the Appellant to relief. *Commonwealth v. Harvey*, 812 A.2d 1190 (Pa.2002).

The court concludes that the Appellant has failed in his burden of proof with respect to all three prongs of the ineffectiveness of counsel test. As opposed to a "he said/she said" case with no other evidence of guilt, trial counsel was faced with two (2) compelling victims, a partial confession which would greatly damage many of the hypothetical defenses proffered, and a client who was facing 174 charges and who wanted to limit the time he spent incarcerated. It is clear the 188 month aggregate minimum sentence imposed by the court caused Appellant to judge trial counsel's performance and fee arrangement in the hindsight of that sentence.

14

Appellant, weighing all of his options and being fully informed of the risk of going to trial as well as the sentencing possibilities, voluntarily plead guilty to the charges.

For the foregoing reasons, the trial court requests that the Order of this Court denying Appellant's first P.C.R.A. petition be affirmed. No further opinion shall follow.

BY THE COURT,

GREGORY J. HAMMOND, J.
May 1, 2017

WARREN COUNTY
PROTHONOTARY/
CLERK OF COURTS

2017 MAY -1 AM 9:59

FILED

15

331